No. 31,723

FLORENCE ESTELLE McVEIGH, *Appellee*, v. THE FIRST TRUST COMPANY OF WICHITA, and THE STATE OF KANSAS, ex rel. ROLAND BOYNTON, Attorney-general, *Appellants*.

No. 31,724

ETHEL WENTWORTH and MABEL THATCHER, *Appellees*, v. THE FIRST TRUST COMPANY OF WICHITA, and THE STATE OF KANSAS, ex rel. ROLAND BOYNTON, Attorney-general, *Appellants*.

(34 P. 2d 571.)

Opinion filed July 7, 1934.

*Roland Boynton*, attorney-general, *W. C. Ralston*, assistant attorney-general, *L. A. Hasty*, *L. P. Brooks* and *Martin P. Shearer*, all of Wichita, for the appellants.

*E. L. Foulke*, *Roy H. Wasson* and *C. E. Robb*, all of Wichita, for appellee Florence Estelle McVeigh; *W. A. Ayres*, *Austin M. Cowan*, *C. A. McCorkle*, *J. D. Fair*, *W. A. Kahrs* and *R. H. Nelson*, all of Wichita, for appellees Ethel Wentworth and Mabel Thatcher.

The opinion of the court was delivered by

SMITH, J.: These were two actions in ejectment. The appeal is from an order overruling a motion to dismiss and a plea in abatement.

The facts are simple. The actions arose out of the estate of Margaret Schindler, who died intestate on March 15, 1930. She left an estate consisting of real estate valued at about $90,000 and personal property valued at about $10,000. The First Trust Company was appointed and qualified as administrator of the estate on March 17. It has acted as administrator at all times since. The probate court of Sedgwick county has at no time known of any heirs of Margaret Schindler. Since the appointment of the administrator the attorney-general of the state has appeared in all proceedings under R. S. 22-1201, 22-1202, 22-1203 and 22-1206. By order of the probate court the administrator has been named and is now in possession of the real estate in question. There has been no final settlement of the estate. The time for final settlement had been extended by the probate court at the time these cases were tried.

Case No. 31,723 was brought by a person who claimed to be the granddaughter of a brother of Margaret Schindler and the assignee of a grandson of the same brother. The petition alleged that plain-

tiff and her assignor were the sole and only heirs of Margaret Schindler. The facts were alleged about as they have been given here. Plaintiff claimed to be entitled to possession of the property.

In case No. 31,724 the action was brought by two persons who claimed that they were daughters of a brother of Margaret Schindler, and that they were the sole and only heirs of Margaret Schindler. This petition also alleged facts with reference to the property, and claimed the right to immediate possession of the real estate in question. There is no connection or relationship claimed between the plaintiffs in the two cases.

To each of these petitions the state and the administrator filed a plea in abatement and a motion to dismiss on the following theories: That the petition on its face does not state a cause of action because it pleads the pendency of the administration in the probate court, which proceedings show that title to the real estate which they claim is in the state of Kansas; and that defendant, The First Trust Company of Wichita, is holding title for the state, which cannot be sued. This motion was overruled. It is from the order overruling this motion that the appeal is taken.

The questions involved are stated in the brief of defendants as follows:

"I. When Margaret Schindler died intestate and without known heirs, the title and right of possession to all of her property vested in the state with a duty to reduce it to funds and hold it for the benefit of the common schools.

"II. The state's title and right to possession can only be defeated by someone proving himself to be an heir in the manner provided by law.

"III. The probate court has constitutional and statutory jurisdiction of:

"(1) The administration of Margaret Schindler's estate. .

"(2) The determination of her heirs.

"(3) The sale of the real estate if there is no heir.

"The probate court's jurisdiction for these purposes attached at the time of filing the application for the appointment of an administrator; and the district court cannot take jurisdiction of any matter or thing that will interfere with the probate court's jurisdiction.

"IV. The state, by the attorney-general, has the right and duty to control the possession and conserve the estate for the benefit of itself and unknown heirs while the title and right to possession is vested in the state and may designate such party as the attorney-general thinks proper to possess and conserve it; and the possession of the attorney-general and such party as he may designate is the possession of the state.

"V. Unknown claimants to be heirs of Margaret Schindler, contending for the possession of her real property as heirs prior to the time of proving themselves heirs in the probate court, have no such right of possession of the real

estate of Margaret Schindler as will enable them to maintain an action against the state or its agent holding possession for itself and for them; and the district court should not take jurisdiction of such suit.

"VI. There is no legislative authority to authorize a suit against the state or its agents, holding the real estate of Margaret Schindler, by one claiming to be an heir to recover from the state or its agent the real estate of Margaret Schindler; and the appellees cannot maintain a suit in ejectment in the district court for that purpose. The appellee's remedy is to prove their heirship in the probate court in the time and manner provided by statute."

The matter of the disposition of the real estate of a person who dies intestate and without heirs has been dealt with by our constitution and statutes. The constitution provides that the proceeds from the sale of such land shall go to the common-school fund. R. S. 22-933 to 22-935 provide how that shall be done. The sections are not lengthy and will be quoted here.

"In all cases where persons die without heirs, and intestate, it shall be lawful for the superintendent of public instruction of the county where any land lies belonging to the estate of such person dying without heir and will, after a lapse of three years from the date of letters of administration upon such estate, to file a petition in the probate court of the county granting such letters, setting forth in said petition—*First,* that such person died without heirs, and intestate; *second,* that three years have elapsed since the date of the letters of administration; *third,* a description of the real estate; *fourth,* that no debts remain unpaid of this estate, not barred by the statute of limitation. Such petition shall be verified by the affidavit of the county superintendent of public instruction, or by some person who has knowledge of the fact.

"It shall be the duty of the probate court, on the filing of the petition mentioned in the preceding section, and being satisfied that the facts stated in said petition are true, to issue an order to the administrator to sell the real estate described in such petition in the same manner as real estate is sold by administrators for the payment of debts due from deceased persons; and the same proceedings shall be had in confirming the sale and the execution of the deed by the administrator as is provided by law for the sale of real estate for the payment of debts of any deceased person.

"It shall be the duty of the administrator, after the payment of the costs of said petition and making said sale, and six per cent commission to each administrator, to pay to the county treasurer of the county where the land is situate the remainder of the purchase money for the benefit of the common schools of the state, and shall take duplicate receipts therefor; and it shall be his duty to file one of such duplicates with the probate court of the proper county. If at any time within twenty-one years after the date of payment of said money to the county treasurer any persons shall appear and claim said money as the rightful heir to said estate, and shall prove heirship satisfactorily to the probate court, the judge of said court shall so certify, and

the state treasurer shall pay over to such claimant the sum so received from the county treasurer from such estate."

It will be noted that a necessary element to the operation of the statute is that the person should have died intestate and without heirs. The question with which we are confronted is, Did the decedent in this case die without heirs? The plaintiffs in these two cases claim that she did not. They are seeking to determine that fact in court, whether by the proper form of action or not we will see presently. At any rate they are contesting this question and asking the court to determine it. Obviously, if the court should determine either one of the plaintiffs in these two cases to be an heir then the element necessary to put R. S. 22-933 to 22-935 into operation would be lacking. Defendants argue that the title must vest some place when the holder of it dies, and that in the absence of heirs it vests in the state. This might very well be true, but we do not know in this case whether decedent died without heirs or not. We are not called upon here to decide a case where something like a tax deed has gone into effect after the death of a decedent. Here, for all we now know, an heir is claiming the estate. If any of them should be successful then the title to the real estate in question vested in him on the death of decedent. The mere fact that the heirship is difficult of proof or the relationship remote does not change the rule. The state only has an interest in the real estate contingent on the failure of an heir to appear within three years. At the end of that time the land may be ordered sold by the probate court on petition of the county superintendent of public instruction in the same manner as real estate is ordered sold to pay debts. There is nothing in that provision to indicate that title to the real estate vested in the state. Not until after that sale has been had do the proceeds get into the hands of an officer representing the state. When that happens it is ordered paid to the state treasurer, who holds it for twenty-one years and then pays it to the common-school fund. We do not regard the finding of the probate court that there were no known heirs of decedent as of any force or effect. The fact is there are persons here insisting that they are the heirs and asking an opportunity to establish their heirship in court. The order of the probate court cannot change that fact.

The defendants next argue that the probate court secured jurisdiction of this matter at the time of filing the application for the

appointment of an administrator and the district court cannot take any action that would interfere with the probate court's jurisdiction.

We have seen that while the title to the real estate passes to the state immediately when intestate dies, providing an heir does not appear within the statutory time to claim it, where one claiming as heir does so appear the title is held in abeyance awaiting the outcome of any such action.

The matter of where title to real property of a deceased person passes has been covered by statute in this state. It passes directly to the heirs with right to immediate possession and to the rents and profits. (R. S. 22-108, 22-118, 22-120.) These statutes have been considered and passed upon by this court. (*Lindholm v. Nelson*, 125 Kan. 223, 264 Pac. 50.) That was a case where an action was brought to set aside a deed that had been given by a widow and which conveyed away the real estate owned by her deceased husband. The probate court had made a final settlement in accordance with the deed. The district court set aside the deed on the ground that it had been obtained by fraud. The holder of the deed appealed, and urged plaintiff was precluded from maintaining her action because of the judgment and decree of the probate court. This court said:

"This contention cannot be sustained. The personal property of the estate of Axel Lindholm was more than sufficient to pay his debts and the expense of administration; there was a sum left for distribution. The administrator, therefore, had nothing to do with the real estate. His bond was based on the value of the personal estate only (R. S. 22-313). Crops growing on the land at the time of the death of decedent passed to the administrator as a part of the personal property of the estate. (R. S. 22-502; *Blakely v. Blakely*, 115 Kan. 644, 645, 224 Pac. 65.) The real property itself passed to the heirs (R. S. 22-108, 22-118), with right to possession, and rents and profits. The administrator had nothing to do with it unless it was necessary to pay debts, as provided by R. S. 22-801. (*Head v. Sutton*, 31 Kan. 616, 3 Pac. 280; *Schmidt v. Loan & Trust Co.*, 112 Kan. 535, 537, 211 Pac. 630; *Nagle v. Davison*, 124 Kan. 230, 257 Pac. 962.) Although the personal estate only is to be appraised (R. S. 22-504), the inventory shall include all the real estate of the deceased. (R. S. 22-501.) There are several reasons why it is advisable to have the real estate listed in the inventory, but this listing gives the administrator no authority over it, and gives the probate court no jurisdiction to dispose of it, except under conditions specifically provided by statute. It is not contended that any of these conditions existed in this case. Hence, the probate court had no jurisdiction of the real estate—no question concerning the real estate before it to be acted upon—at the time of the final settlement of the estate of Axel Lindholm. The order of final settlement is not, therefore, a bar to plaintiff's action to set aside the deed previously made to Nelson." (p. 229.)

This was the holding of this court in *Reading v. Wier*, 29 Kan. 429. The question there was whether the administrator was bound to pay taxes on real estate of his decedent. This court held he was not, and used the following language:

"The lands of an intestate descend to the heirs, subject in certain contingencies to the payment of the debts of the intestate. The legal title is in the heirs, and the administrator takes no interest in the real estate, but possesses a naked authority to sell it on license to pay the debts where the personal estate is insufficient." (p. 430.)

To the same effect is the opinion of this court in *Head v. Sutton*, 31 Kan. 616, 3 Pac. 280. There, in considering a similar question, this court said:

"The real estate of the intestate descended at once to his heirs, and the title thereof was vested in them subject only to the right of the administrator to sell the same for the payment of the debts in the manner prescribed by law. (*Reading v. Wier*, 29 Kan. 429.) So the title to the real estate, which the heirs took by descent, entitled them to the possession of it, and they had the right to receive, as against the administrator, all the rents and profits thereof." (p. 619.)

It would be difficult to find a proposition that has been settled any more definitely by statute and decision than has this one.

Defendants urge that the statutes which have been quoted herein confer exclusive jurisdiction on the probate court to administer the real estate of a decedent where there are no heirs. The trouble about that is that we cannot say, until the outcome of these cases, that the decedent in this case left no heirs. The fact that the probate court made the order that the decedent died without known heirs cannot operate to confer jurisdiction on the probate court which it did not already have.

Defendants argue in this connection that R. S. 22-904 and R. S. 1933 Supp. 22-904a provide for the determination by the probate court of who are the heirs of a decedent who take the real estate under the statute of descents and distribution. This contention is met by the holdings of this court which have already been cited here and by other authorities which hold that a probate court has no jurisdiction to determine the title to real estate. In the case of *Byerly v. Eadie*, 95 Kan. 400, 148 Pac. 757, this court considered the question and said:

"In actions involving title or interest in real estate probate courts, except where the constitution of the states gives them general jurisdiction, have no power or jurisdiction to determine the title to realty. (*Cooper v. Armstrong*, 3 Kan. 78.) . . . In *Stewart v. Lohr*, 1 Wash. 341, 25 Pac. 457, one of the

cases cited in the opinion (*Cooper v. Armstrong*) it was said: 'For while it is true that the probate court has jurisdiction to determine the claims to property as between those interested in the estate, this authority only goes to the extent of determining their relative interests as derived from the estate, and not to an interest claimed adversely thereto.' In that case the person claiming adversely to the estate was the husband of the deceased party, but it was held that this made no difference; that 'the husband, though interested in the estate of his deceased wife, was, so far as the claim he was attempting to assert, an entire stranger thereto' (p. 343), citing *Budd v. Hiler*, 27 N. J. Law 43. To the same general effect see *Ferguson et al. v. Hunter*, 7 Ill. 657; *Stewart and wife et al. v. Pattison's Exc'r et al.*, 8 Gill (Md.), 46; *Hayden v. Burch et al.*, 9 Gill (Md.), 79. In *J. W. Hollman v. W. W. Bennett et al.*, 44 Miss. 322, it has been held that probate courts have no constitutional or inherent jurisdiction over land for any purpose whatever, but only such special conditional power as is expressly conferred by statute." (p. 404.)

This opinion was approved by this court in the case of *First Colored Baptist Church v. Caldwell*, 139 Kan. 45, 30 P. 2d 144. In the opinion denying a rehearing in that case this court amended the syllabus in the opinion affirming the decision of the trial court to read as follows:

"While under the provisions of R. S. 22-904 probate courts have authority to find who are the heirs, devisees and legatees of a deceased person, the statute does not confer on the probate court the authority to adjudicate title to real estate."

See, also, *Cotton v. Wallace*, 138 Kan. 814, 28 P. 2d 985. In that case the action was an appeal from an order of a probate court refusing to set aside a final settlement. It was urged that the administrator should have been compelled to settle for the proceeds of the sale of a quarter section of real estate. In dealing with that question this court said:

"Appellants argue the purported deed to the Tama county land was not a deed, but an attempt to convey property by will without complying with the formality of making a will. A decision on that point would involve an adjudication of the title to real estate. The proceeding under review is an order of a probate court approving a final report of an executor. Probate courts do not have jurisdiction to hear and determine actions involving title to real estate. (See R. S. 20-1101.) Hence, the matter of the purported conveyance of the Tama county land was not properly before the trial court and may not be determined in this appeal." (p. 816.)

It will be seen that this court has steadfastly adhered to the rule that a probate court has no jurisdiction to adjudicate the title to real estate even though the statutes do confer on them the authority to make a finding as to who are the heirs.

Defendants rely on the case of *Holmes v. Conway*, 128 Kan. 430,

278 Pac. 8. In that case the administrator had a large sum in his hands which he had derived from oil royalties. Thirty-three people claimed to be heirs of the deceased and entitled to a share of the estate. The administrator brought an action seeking to have the district court determine who were the heirs of deceased. The administration of the estate was going on in probate court at the time. All the claimants had submitted themselves to the jurisdiction of the probate court. The court held:

"Where a party has a plain and adequate remedy by an ordinary legal proceeding in a probate court, touching a matter over which the probate court is already exercising jurisdiction with ample power to grant the relief prayed, he may not invoke the jurisdiction of the district court to accomplish the same purpose." (Syl. ¶ 1.)

The rule thus stated is not in point here because, as we have already seen, the probate court does not have power to grant the relief sought. The relief sought is the determination of the title to real estate. That cannot be had in the probate court. This court had such a situation in mind when it said in the above case:

"Of course, there may be circumstances where findings of the probate court with respect to who are entitled to the distributive shares of the estate are not conclusive. (See *Lindholm v. Nelson,* 125 Kan. 233, 264 Pac. 50, and cases cited therein.) Situations may exist in which persons claiming such shares might bring and maintain actions in the district court. This, however, would not concern the administrator. He is appointed by the probate court, and when he makes distribution in accordance with the orders of the court he has no further responsibility in the matter. If there are conflicting claims between persons with respect to their rights, or shares of the estate, they may present such claims either to the probate court or they may bring independent actions in the district court. In the instant case, when the heirs have been ascertained in the probate court and their respective rights determined, we think the plaintiff who is acting as a trustee in so far as the oil royalties are concerned, will find little difficulty in distributing them to their rightful owners." (p. 433.)

We hold, therefore, that the actions are simple ones where parties who claim to be entitled to the possession of real estate find it in the possession of one whom they claim is not entitled to the possession of it. In such a case ejectment is the proper remedy. The outcome of these actions will decide whether these particular plaintiffs own the title to the real estate in question and are entitled to possession of it.

What has been said here settles the question of whether the suit is against the state, and whether consent to sue has been given in favor of the contentions of plaintiff.

There are some further questions in the action which merit consideration.

The attorney-general has been appearing so far in these actions under R. S..22-1201 to 22-1206. These sections provide a wise plan by which the estate of a person who dies without heir or a will may be preserved for the common-school fund and saved from spoliation. The attorney-general has already saved this estate from an attack on the part of the people who claimed it under a contract with deceased. (See *Woltz v. First Trust Co.*, 135 Kan. 253, 9 P. 2d 665.)

It is the duty of the attorney-general to appear and secure permission to answer and interplead and defend, in the name of the state, all cases that involve this estate, both in the district court and the probate court. That official has entire control of litigation growing out of claims of people claiming to be heirs of deceased. (See R. S. 22-1201 *et seq.;* also, *State, ex rel., v. Rector,* 134 Kan. 685, 8 P. 2d 323.)

From what has been said here it will be seen that the administrator of the estate of decedent has no right to possession of the real estate in question. There should, however, be a conservator appointed to take charge of the property, collect the rents, make repairs, pay insurance and perform similar duties.

No reason appears why the company now acting as administrator should not act in this capacity, but such an appointment should be made.

With the decision of this appeal there will be two cases pending in the district court of Sedgwick county to determine whether the plaintiffs in these actions are heirs of deceased. They each are actions to be tried before a jury.

The plaintiffs in each of the cases claim the real estate in question from a common ancestor. The actions are such as should be consolidated for trial to the end that the title to the property should be adjudicated as speedily and with as little expense as possible. This may be done under the authority granted the district courts by R. S. 60-765. A wide discretion is granted district courts by that section, and these two actions call for the exercise of it. A proper order to be made by the trial court would be that the real estate shall not be sold for taxes during the pendency of these actions.

The judgment of the trial court overruling the demurrers and pleas in abatement is affirmed.

HARVEY, J., dissenting.